Thurman, C. J.
¥e think the testimony fully warrants the finding of the master, that $5,000 of the present indebtedness of Thompson & Campbell to the complainants, originated in 1845, and is covered by the original mortgage, executed by the former to the latter. True, the evidences of indebtedness were, from time to time, changed ; that is, the first acceptances of the complainants covered by the mortgage, were taken up by the proceeds of other drafts of Thompson & Campbell, drawn upon and accepted by the complainants ; and this process of renewal went on until the amount of the original acceptances, $5,000, was embraced in the drafts mentioned in the bill. This was done without any intention of releasing or varying the mortgage security; the debt continuing without the least interruption, though the evidences of it were different at different times. That those changes iu the mere evidences of indebtedness did not affect the lien of the mortgage is very evident from the cases of Patterson v. Johnson, 7 Ohio (pt. 1), 225, and Brinckerhoff v. Lansing, 4 Johns. Ch. 65. As this lien is of an earlier dato than that of either of the other parties to the suit, the master was correct in giving the complainants the priority complained of.
I have spoken of the first acceptances given by the complainants as creating a debt due them from Thompson & Campbell, the latter having been debited with them according to mercantile usage in such cases. But if it be more proper to say that they merely constituted the relation of ^principal and surety be- [428 tween the parties, and that the mortgage is to be regarded as an indemnity merely, the case will not be different in principle, as the before-mentioned authorities fully show. This disposes of the first two exceptions.
The third exception is unfounded in fact. The testimony does not show that the mills were run for the joint interest of Thompson & Campbell and the complainants. There was no community *429 of profit and loss, nor any joint ownership of property between them. On the contrary, the latter were merely the commission merchants of the former, receiving and selling property, and making advances as commission merchants are accustomed to do.
As to the fourth exception, Campbell was a competent witness. If he was not wholly disinterested, as complainants contend, it must be admitted that his interest was, at least, evenly balanced.
Besides, his first deposition was taken and used without objection. If he is incompetent now, he was equally so then, and the parties knew it. Having failed to except to that deposition, they waived the objection to his competency; after which they could not interpose it to prevent his again testifying in the same case.
That his deposition was taken without a previous order of court is immaterial. The practice in Ohio is to take the deposition of a co-defendant in chancery without leave, subject to the right of the party against whom it is taken to except to it. This practice is indispensable to prevent delay, especially in the courts that sit but once a year.
The deposition does, with the other testimony, establish the priority awarded to the complainants by the master; and if it is inconsistent with the allegations of the original bill, which we do not affirm, that objection is removed by the amendment to the bill.
The last exception is, that the report is contrary to the evidence. We do not think so.
As to the suggestion made at bar, that some parts of the ma-429] ckinery on lot No. 22 were not fixtures, and therefore the *complainants’ mortgage was not a lien upon them, I may remark, first, that no such pieces of machinery have been specified; secondly, that the objection sounds rather strange in the mouth of a party setting up a mechanic’s lieu upon this very machinery as a part of the freehold ; thirdly, that it comes too late after all the parties, pleadings, and orders of appraisement and sale have treated the property as a part of the realty, and it has been appraised and sold as such; and lastly, that we see nothing in the evidence to satisfy us that its true character has been mistaken.
The exceptions to the master’s report must be overruled, the report confirmed, and a decree be entered accordingly.